HUTSON B. SAUNDERS *vs.* JOHN B. CURTIS.

Hancock.    Opinion December 28, 1883.

*Contract.    Deed.    Reasonable time.*

Where a party in a written contract for sufficient consideration promises to pay another a certain sum of money, when he shall be able to convey by a good and sufficient deed premises of which he then had no title, no action can be maintained upon the promise until the other party has first obtained a title and tendered a good and sufficient deed thereof. This is a condition precedent and to avail it must be performed, when no time is named, within a reasonable time.

In such a case a reasonable time is such time as is necessary conveniently to do what the contract requires should be done, and a delay of one year not satisfactorily explained is an unreasonable time.

ON REPORT.

Assumpsit on the written promise of the defendant recited in the opinion. The writ was dated March 25, 1881, and the plea was general issue and a brief statement setting up the statute of frauds.

The opinion states the material facts.

*Charles P. Mattocks,* for the plaintiff.

The agreement is sufficient to take the case out of the statute of frauds. R. S., c. 111, § 1; *Levy* v. *Merrill,* 4 Maine, 180; *King* v. *Upton,* 4 Maine, 387; *Appleton* v. *Chase,* 19 Maine, 74; *Eveleth* v. *Scribner,* 12 Maine, 24; *Barstow* v. *Gray,* 3 Maine, 409.

The agreement of the plaintiff was to be performed within a reasonable time and therefore the instrument is not void because no time is named. *Atwood* v. *Cobb,* 16 Pick. 227.

The case nowhere discloses any desire or effort on the part of the defendant to rescind the agreement prior to the tender of the deed by the plaintiff, March 17, 1881.

If the defendant desired to rescind the contract he should have done so within a reasonable time.

What is a reasonable time is a question of law. In *Kingsbury* v. *Wallis*, 14 Maine, 57, the court held that in the absence of all testimony tending to show that so long a time was necessary, a delay of two and one-half months was beyond a reasonable time. Here the defendant did nothing for a year, and his remark, that the plaintiff had got him, at the time the deed was tendered, shows that he had not rescinded and that he considered himself still holden by the contract.

*Bion Bradbury*, for the defendant, cited : 2 Pars. Contracts, 561, 562 ; *Howe* v. *Huntington*, 15 Maine, 350 ; *Kingsley* v. *Wallace*, 14 Maine, 57 ; *Schlessinger* v. *Dickinson*, 5 Allen, 47.

DANFORTH, J.　This is an action · upon a written promise signed by the defendant of the following tenor, viz : " Ellsworth, February 25, 1880. I hereby agree to pay H. B. Saunders, thirty-five hundred dollars ($3500) when he shall be able to convey to us by good and sufficient deed the Joseph Gott lot, so called, situated on the western side of Long Island, in Bluehill Bay, and said to contain one hundred acres more or less."

As a consideration for this promise by the defendant the plaintiff · offers the following writing signed by himself and which makes a part of the declaration in his writ, viz : " Ellsworth, February 25, 1880. I am to give Taylor, Curtis, Proctor and Morse, a deed of the Joseph Gott Island lot, so called, said to contain one hundred acres, more or less ; conveying by said deed to them a good and sufficient title upon the payment to me by said Taylor *et als*. of the sum of thirty-five hundred dollars on delivery of said deed."

These two instruments are not only of the same date, but as the case shows were made at the same time and are but parts of one and the same transaction. Hence they must be construed together as constituting one contract.

The case shows what is entirely consistent with the written contract, construed as a whole, that at the time the several promises were made, the plaintiff had no title to the land and that

the parties understood that it was thereafter to be obtained by the plaintiff from the owner then supposed to be Mr. Gott. The purchase of this lot was the object sought by the defendant and the conveyance of a good title was the condition upon which he was to pay the stipulated price. Until this condition was performed, no obligation rested upon him to make any payment or do any other act. A tender on his part, before this, would be of no avail in obtaining the title, for the plaintiff could not be compelled in a court of equity or elsewhere to convey a title when he had none, and if the tender under the circumstances of this case could lay the foundation of an action to recover damages, that might be a very inadequate remedy and would certainly fail to give that which the contract contemplated, the land itself. Hence no duty was imposed upon the defendant until the plaintiff first performed the condition precedent. This was first to be performed by the plaintiff if he would give force and vitality to the contract and as no time in which it was to be performed was specified, by well settled legal principles it must be done within a reasonable time. 1 Parsons on Contracts, 450; *Howe* v. *Huntington*, 15 Maine, 350. That the plaintiff so understood his duty is evident from the prompt and immediate measures taken by him to procure a title from the supposed owner, upon whom he had, or supposed he had, some claim for a conveyance. But it appears that this supposed owner had conveyed to other parties on the same day and necessarily these measures failed. Of this failure the defendant was at once notified with a request to surrender and cancel the contract. That request was not complied with. But notwithstanding this it may be questionable whether the contract was not at an end. It certainly would have been if there had been no action on the part of the defendant.

But it is claimed that the defendant's refusal to rescind was a waiver of the failure of the plaintiff and he is now estopped to deny the continued existence of the contract.

It may be true that there was a waiver of the failure to obtain a title at that time, but assuming that the contract continued, there was no waiver of any of its terms. If it continued after

it was the same contract as before. The same conditional liability rested upon the defendant, the same obligation of diligence upon the plaintiff.

The failure in the first instance had resulted mainly, perhaps entirely, from the fact that the supposed owner had parted with his title. But when this fact was ascertained it was also learned into whose hands the title was conveyed. If, then, the plaintiff would continue the contract in force, it was his duty to make all reasonable exertions to procure the title from the new owner. Instead of that, from his own testimony, it appears that he made no effort to that end until February 9, 1881, nearly one year after the contract was made and after the alleged waiver of the first failure. It further appears that at that time the negotiation for the purchase began and ended in success on the same day.

This long delay which the plaintiff does not see fit to explain, we think unreasonable. In coming to this conclusion we do not in any degree rely upon the speculative value or want of it in the land. Such value is too uncertain and partakes too largely of the nature of gambling to have any countenance or recognition in the law. We rely upon the more definite and certain rule laid down in *Howe* v. *Huntington, supra*, that when a matter of contract is to be done within a reasonable time, it means, "so much time as is necessary conveniently to do what the contract requires should be done." This rule seems to be well sustained by the authorities cited, and is peculiarly applicable in this case, in which it seems to have been contemplated and understood by the parties that the contract was to be performed in the shortest convenient time. The non action of the defendant in regard to it, shows that he had for a long time considered it at an end and the law justifies that conclusion.

*Judgment for defendant.*

PETERS, C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.